UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------- x
ELIANA GALAN and CAROLINA          :
GUERRERO, on behalf of themselves     :          **No. 18-cv-02603-ENV-JO**
and others similarly situated,             :
                                                      :
               Plaintiffs,                    :
 - against -                                    :
                                                      :
CARLOS SEGARRA; LUZMILA            :
SEGARRA; JUAN CARLOS              :
SEGARRA; LUIS CAGUANA;            :
SEGARRA GROUP;                       :
CHIFLEZ CORP; and COSITAS RICAS   :
ECUATORIANAS CORP. d/b/a EL         :
PEQUENO COFFEE SHOP;               :
                                                      :
               Defendants                   :
-------------------------------------------------- x


**POST-INQUEST HEARING MEMORANDUM IN SUPPORT OF
<u>PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT</u>**


**<u>Law Office of Mohammed Gangat</u>**
675 Third Avenue, Suite 1810
New York, NY 10017
mgangat@gangatpllc.com (718) 669-0714

## PRELIMINARY STATEMENT

Plaintiffs Eliana Galan ("Eliana") and Carolina Guerrero ("Carolina" and together with Eliana, "Plaintiffs") submit this memorandum in further support of their motion for default judgment against defendants Carlos Segarra, Juan Carlos Segarra, Chiflez Corp. and Cositas Ricas Ecuatorianas Corp. (collectively, "Defendants").

Plaintiffs appeared at an inquest hearing on October 10, 2018 where Eliana and Carolina each testified in support of the motion for default judgment. A transcript from the hearing is attached as Exhibit A to the Second Declaration of Mohammed Gangat in support of the motion ("Second Gangat Decl.").

At the hearing Plaintiffs confirmed that they were deprived of legally-mandated minimum wages, overtime wages, and 'spread of hours' wages in violation of the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and New York Labor Law §§ 190 *et seq*., and 650 *et seq*. As explained more fully in the memorandum of law submitted in support of the motion, Plaintiffs are entitled to a judgment awarding recovery of their unpaid minimum wages, unpaid overtime compensation, unpaid 'spread of hours pay, liquidated damages, statutory damages for wage notice violations, prejudgment interest, attorneys fees and costs of this action, and such other further relief as the Court deems just and proper. Since the submission of that memorandum of law, Plaintiffs have refined their position and are submitting this memorandum of law where Plaintiffs (a) set forth a new proposed findings of fact, (b) withdraw the motion as against defendant Luis Caguana and defendant Luzmila Segarra, and (c) withdraw plaintiff Eliana Galan's claims for violations of the New York Labor Law provisions concerning annual wage notices and periodic wage statements.

## PROPOSED FINDINGS OF FACT

*The Employment*

1.      Eliana worked for Chiflez restaurant starting around February 2015.  (Tr. 3:21-4:8; *see* Compl. ¶ 13; Galan Aff. ¶ 1).

2.      Eliana's employment with Chiflez ended on December 22, 2016, when Eliana resigned due the restaurant denying her request to take off from work on Christmas Eve.  (Tr. 7:4-13; *see* Compl. ¶ 13; Galan Aff. ¶ 1.)

3.      Carolina worked for El Pequeno restaurant starting in July 2016 and remained employed to a date between January 28, 2017 and early February 2017.  (Tr. 15:7-16:23; *see* Compl. ¶ 14; Guerrero Aff ¶ 1.)

4.      Chiflez is located at 95-02 Roosevelt Avenue, Jackson Heights, New York, 11372.  (*See* Compl. ¶ 8.)

5.      According to the records on file with the New York State Department of State, defendant Chiflez Corp is a New York Corporation with a principal executive office at 95-02 Roosevelt Avenue, FL 1, Jackson Heights, New York, 11372, and the Chief Executive Officer of the corporation is Carlos Segarra, having an address of 8502 Roosevelt Avenue, FL 1, Jackson Heights, New York, 11372.  (A copy of the relevant NYS DOS records is attached as Exhibit B to the Second Gangat Decl.)

6.      El Pequeno is located at 86-10 Roosevelt Avenue, Jackson Heights, New York 11372.  (*See* Compl. ¶ 9.)

7.      According to the records on file with the New York State Department of State, defendant Cositas Ricas Ecuatorianas Corp. d/b/a El Pequeno Coffee Shop ("Corporate Defendant" or "El Pequeno") is a New York Corporation with a principal executive office at 86-

10 Roosevelt Avenue, Jackson Heights, New York 11372, and the Chief Executive Officer of the corporation is Carlos A Segarra, having an address of 8610 Roosevelt Avenue, Unit 4, 1st FL, Jackson Heights, New York, 11372.  (A copy of the relevant NYS DOS records is attached as Exhibit C to the Second Gangat Decl.)

8.     Eliana testified that Juan Carlos Segarra hired her to work at Chiflez, and he set her rate of pay, directed her work, and was in charge of paychecks.  (Tr. 5:13-6:12.)

9.     Carolina testified that Juan Carlos Segarra would come to El Pequeno "a lot" and when present he would observe and pay attention to everything.  (Tr. 15:24-16:8.)  Carolina also testified that the manager, Jacinto, told Carolina that defendant Juan Carlos Segarra "was one of the people in charge" of things like hiring and firing employees at El Pequeno.  (*Id*.)

10.     Eliana testified that she knew defendant Carlos Segarra to be an owner of Chiflez restaurant because another employee, Veronica, told her and because all of the mail would come in the name of Carlos Segarra.  (Tr. 13:4-19.).  Eliana testified that she believed that as the owner defendant Carlos Segarra could fire her from her employment with Chiflez.  (*Id*.)

11.     Carolina testified that defendant Carlos Segarra was an owner of El Pequeno restaurant, along with defendant Luzmila Segarra.  (Tr. 14:24-15:4.)  Carolina testified that she was hired by "Jacinto", a manager at the restaurant who reported to defendant Carlos Segarra.  (Tr. 15:7-15.)  Carolina also testified that Carlos Segarra had the authority to fire her, (*id*.), and was consistently present at the restaurant and when present, he would observe everything that was going on at the restaurant.  (Tr. 15:16-23.)

12.     The above factual findings support the conclusion that defendant Carlos Segarra and Juan Carlos Segarra (the "Individual Defendants") controlled, supervised and directed Plaintiffs with respect to the work Plaintiffs performed.  Furthermore, the Individual Defendants

were present on the premises of the restaurants on a consistent basis, actively supervised the work of employees, including Plaintiffs, and that all issues concerning employment, including hours worked and pay received, be approved by them.

*Wages and Hours*

13.     Eliana was paid nothing for her first week of work, $30 each day worked during her second week of work, and $40 each day worked in all subsequent weeks.  (Tr. 5:7-16; Compl. ¶ 26; Galan Aff ¶ 4.)

14.      Eliana worked five days per week Wednesday-Sunday, her hours being from 6am-4pm on Wednesdays, Thursdays and Sundays, and from 6am-5pm on Fridays and Saturdays; in other words, she was working 52 hours per week, for an effective hourly rate of $3.84.  (*Id*.)

15.     Carolina worked different schedules at different points in the employment; starting July 2016 and continuing through August 2016, she worked each week, two 8-hour shifts for $9.50 per hour and two 9.5-hour shifts, for wages of $40 per shift, or $4.21 per hour.  (Tr. 16:19-17:12; Compl. ¶ 29; Guerrero Aff. ¶ 4.)

16.     From September 1-December 15, 2016, Carolina worked five days, 9.5 hours each day, and wages of $40 per shift, or $4.21 per hour.  (Tr. 17:14-18:13; Compl. ¶ 30; Guerrero Aff. ¶ 5.)

17.     During the course of their employment, Plaintiffs were never paid the full minimum wage, overtime pay, or New York State "spread-of-hours" pay.  (Compl. ¶ 26-34.)

18.     Defendants violated both the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") in willfully failing to pay Plaintiffs the full applicable minimum wage and one-half times that minimum wage rate.  (*See id*. ¶ 59-85.)

- 5 -

19.     Defendants also violated the NYLL in willfully failing to pay "spread-of-hours" pay to Plaintiffs despite the fact that there were days when Plaintiffs worked in excess of ten hours per day.  (*Id*. ¶ 78-79.)

20.     Consequently, Defendants owe Plaintiffs unpaid wages in the amount of $35,615 to Eliana Galan and $7,738.50 to Carolina Guerrero.  (Gangat Decl. ¶ 9-18.)

*Wage Records, Wage Notice and Wage Statements Violations*

21.     Defendants failed to maintain records of the hours during which Plaintiffs performed work for the Defendants.  (Compl. ¶¶ 37.)

22.     At the time Defendants hired Plaintiff Carolina Guerrero, they failed to provide her sufficient notice of her rate of pay and her regularly designated payday and as otherwise required under New York Labor Law Section 195(1).  (Compl. ¶ 84; Guerrero Aff ¶ 11; Tr. 20:3-6.)

23.     Defendants failed to in making each payment of wages to Plaintiff Carolina Guerrero provide a written statement stating the dates of work the wages covered, the name of the employer, address of the employer, rate of pay and the basis for it, gross wages, deductions, allowances claimed as part of the minimum wage, net wages, overtime rate of pay, and the number of overtime hours.  (Guerrero Aff. ¶ 12; Tr. 20:10-15.)

24.     Defendants failed to disclose or apprise Plaintiffs of their rights under the law. Compl. ¶¶ 38-40, 80-81, 84.

*Defendants' Default*

25.     Defendants were properly served with the Complaint in this matter, failed to plead or otherwise in the time required by the rules, and the Clerk of Court entered the Defendants' default on July 2, 2018. Gangat Decl. ¶ 4-5.

## PROPOSED CONCLUSIONS OF LAW

### I.      Jurisdiction and Venue

This Court has original federal question jurisdiction over this controversy pursuant to 29 U.S.C. § 216 (b), 28 U.S.C. §§ 1331, 1337 and 1343.  At all relevant times, at all relevant times, Defendants (a) had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce and (b) had gross revenues in excess of $500,000.  (Complaint ¶¶ 12, 60, 62.)  Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C.  §§ 206(a) and 207(a).  (*Id.*)

This Court has supplemental jurisdiction over Plaintiffs' state law wage and hour claims because those claims and Plaintiffs' FLSA claims arise from a common nucleus of operative fact.  28 U.S.C. § 1367.

Venue is proper in the Eastern District because the conduct making up the basis of the complaint took place in this judicial district.  28 U.S.C. § 1391.

### II.     Proper Defendants

At the hearing Plaintiffs confirmed that each of the Defendants named in the action, except Defendant Luis Caguana and Defendant Luzmila Segarra were Plaintiffs' "employers" as defined in the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  *See* 29 U.S.C. § 203(d); N.Y. Lab. Law § 190(3).

The FLSA broadly defines an "employer" as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The New York Labor Law is equally expansive, defining "employer" as "any person [or] corporation ... employing any individual in any occupation .... " NY. Lab. Law § 190(3).  Under the FLSA,

the Second Circuit has held individuals liable through the application of an "economic reality" test.  Under the economic reality test, some of the relevant factors are whether the individual had the power to hire and fire the employees, the extent to which the individual controlled the schedules or conditions of employment, the individual's control over the rate of pay and method of payment, and whether the individual maintained the employment records.  *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2nd Cir. 1984).  Under the NYLL, courts have also held individuals liable as employers using the "economic reality" test.  *Bonito v. Avalon Partners, Inc.*, 106 A.D.3d 625, 626 (1st Dept. 2013); *Matter of Carver v. State of New York*, 87 A.D.3d 25, 30 (2nd Dept. 2011).

Here, Defendants Carlos Segarra and Juan Carlos Segarra satisfy the "economic reality" test under FLSA and NYLL to be individually, and jointly and severally liable as employers for the damages owed to Plaintiffs.

In sum, Plaintiffs have alleged that each of the Defendants was their employer. Further, Plaintiffs have alleged that the Defendants exercised "managerial responsibilities" and substantial control of the terms and conditions of their work in various ways. Accepting Plaintiffs' allegations as true, as the Court does where, as here, the Defendants are in default, the Defendants qualify as Plaintiffs' employer such that they are jointly and severally liable to Plaintiffs under the FLSA and New York Labor Law.

### III.   Plaintiffs are Entitled to Entry of a Default Judgment

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process by which a default judgment may be entered.  First, when defendants have properly been served with a complaint but fail to plead or otherwise defend, the court clerk enters a default on the docket. Fed. R. Civ. P. 55(a).  Then, if the defendants remain in default, the court may enter a default

judgment, and award plaintiff damages and other relief. Fed. R. Civ. P. 55(b).

Dispositions of motions for default judgment are left to the sound discretion of the district court. *Shah v New York State Department of Civil Service*, 168 F. 3d 610, 615 (2d Cir. 1999). In civil cases, where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party. Fed. R. Civ. P. 55(b)(2); *see also Bermudez v. Reid*, 733 F. 2d 18, 21 (2d Cir. 1984).

In determining whether to enter default judgment, courts consider such factors as whether the grounds for default are clearly established, whether the complaint states a valid cause of action, whether the plaintiff will be prejudiced by a delay in obtaining judgment, and the effect a default judgment might have on the defendant. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F. 2d 61, 65 (2d Cir. 1981).

Here, Plaintiffs are entitled to entry of default judgment because the Defendants were properly served with the Complaint but have nonetheless failed to appear, and because the circumstances of this case favor entry of default judgment. For example, Plaintiffs will be severely prejudiced if default judgment is not granted because it is the only way they may obtain relief for their unpaid wages. What is more, the Complaint is meritorious, well pled and, thus, entitles them to relief. Further, if default judgment is not granted, the Defendants will escape liability for violating the law.

Defendants' failure to appear despite having knowledge of this action for several months shows that their failure is willful and, therefore, any impact that default judgment may have on them is immaterial. *See Burch v. Nyarko*, No. 06 Civ. 7022, 2007 U.S. Dist. LEXIS 43275, at* 9 (S.D.N.Y. June 15, 2007).

For these reasons, entry of default judgment pursuant to Rule 55(b) is warranted.

### a. Defendants are Liable to Plaintiffs for Unpaid Wages and Other Statutory Violations

When a default judgment is entered, the defendants are deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability. *Greyhound Exhibitgroup, Inc. v. E.L. UL. Realty Corp.*, 973 F. 2d 155, 158 (2d Cir. 1992). As the Defendants have failed to appear, they are deemed to have admitted each of Plaintiffs' allegations. Therefore, they are liable to Plaintiffs for the claims alleged in the Complaint.

#### i. Federal Minimum Wage and Overtime

Defendants failed to pay Plaintiffs the full minimum wage under the FLSA. During the relevant time period of this action when Plaintiff was underpaid or unpaid, the federal minimum wage was $7.25 per hour. See 29 U.S.C. § 201 et seq. As demonstrated in Plaintiffs' Spreadsheet of Damages, attached as Exhibit D to the Gangat Declaration, Defendants failed to pay Plaintiffs at the federal minimum wage rate, and thus violated federal minimum wage law. Defendants are not entitled to take a tip credit from Plaintiffs because they failed to notify Plaintiffs, orally or in writing, about the tip credit provisions of the FLSA. 29 U.S.C. § 203(m); Compl. ¶ 38; Galan Aff ¶ 8-9; Guerrero Aff ¶ 8-9; Tr. 5:17-6:12, 18:14-18.)

Defendants also failed to pay Plaintiffs proper overtime pay, equivalent to one-and-a-half times the greater of the minimum wage or employee's regular rate of pay for each hour of work over 40 hours per week, despite Plaintiffs regularly working over 40 hours per week. 29 U.S.C. § 207.

#### ii. State Minimum Wage, Overtime, and Spread of Hours

Defendants failed to pay Plaintiffs the full New York State minimum wage. During the course of their employment, the New York State minimum wage was $8.75 per in 2015; $9.00

per hour in 2016; and $11.00 per hours in 2017.  NYLL § 652; 12 NYCRR § 146-1.2.

Defendants are also not entitled to take a tip credit under the NYLL because they failed to notify Plaintiff, orally or in writing, about their intention to claim a tip credit against their minimum wage obligations to reduce the applicable minimum wage.  Furthermore, Defendants did not provide the Plaintiff with a written notice of her regularly hourly pay rate, overtime hourly pay rate, the amount of tip credit to be taken from the basic minimum hourly pay rate, or the regular payday, nor did Defendants provide explicit notice that extra pay is required if tips are insufficient to bring Plaintiff's wages up to the basic minimum hourly rate.  12 New York Codes Rules & Regulations ("NYCRR") § 146 - 1.3; Compl. ¶ 38; Galan Aff ¶ 8-9; Guerrero Aff ¶ 8-9.

Lastly as to the NYLL unpaid wages, where an employee is at work for more than 10 hours per day, including as part of a split shift, the employer is required to pay the employee an extra hour of pay at the full minimum wage.  12 NYCRR § 146 - 1.6(a).  Despite working over 10 hours per workday on several occasions, Plaintiffs were never paid this extra hour of pay.

### iii.  Plaintiff Carolina Guerrero is Entitled to Damages for Notice Violations

The NYLL requires employers to provide their employees with information pertinent to their employment, both at the time of hiring and when receiving wage payments.  NYLL § 195. Under the Wage Theft Prevention Act, effective April 9, 2011, the law provided that the employer must:

> [P]rovide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of

business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. . . .

and,

furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.  For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

Effective February 27, 2015, after ten business days following an individual's first day of employment, violations of § 195(1) incur a penalty of $50 per work day, up to $5,000, together with costs and fees. NYLL § 198(1–b). Violations of § 195(3) incur a penalty of $250 per workday, up to $5,000, together with costs and fees. NYLL § 198(1–d).

Because Plaintiff Carolina Guerrero never received this notice, Plaintiff's length of employment qualifies her to receive the statutory maximum of $10,000.00 in damages.  In other words the statutory maximum is due in this case because Plaintiff Carolina Guerrero worked in excess of 100 days beyond her first ten days of employment for the purpose of notice of pay rate upon hire requirement, and Plaintiff Carolina Guerrero worked over 20 days beyond when her first wage statement was due for the purpose of the wage statement requirement.

IV. **Plaintiffs are Entitled to Compensatory Damages, Liquidated Damages, Prejudgment Interest, Attorneys' Fees and Costs**

a. *Compensatory Damages*

Where defendants have defaulted, plaintiffs need only demonstrate the extent of their damages, and need not "introduce any evidence whatever in support of the allegations of [their]

complaint." *Boyke v. Superior Credit Corp.*, No. 01 Civ. 0290, at *4, 2006 U.S. Dist. LEXIS 93928 (N.D.N.Y. Dec. 28, 2006).  "At most, all that defendant can do is question the extent of the damages suffered by plaintiff." *Id*. at *4-5.  A court need not hold a hearing on damages. The Court "may, but need not, make the determination [of damages] through a hearing. Rather, ... the court may rely on detailed affidavits or documentary evidence to evaluate the proposed sum." *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  Here, Plaintiffs Have testified and submitted detailed affidavits and exhibits demonstrating their damages that have provided the Court with a basis for awarding damages.

"[W]here the employer has defaulted, the courts have held that the plaintiff[s]' recollection and estimates of hours worked are presumed to be correct." *Pavia v. Around the Clock Grocery, Inc.*, No. 03 Civ. 6465, 2005 U.S. Dist. LEXIS 43229, at* 18 (E.D.N.Y. Nov. 15, 2005) (quoting *Zeng Liu v. Jen Chu Fashion Corp.*, No. 00 Civ. 4221, 2004 U.S. Dist. LEXIS 35, at* 8-9 (S.D.N.Y. Jan. 7, 2004)).  Here, because Defendants have defaulted, Plaintiffs' representations concerning their hours worked and wages owed are taken as correct. Therefore, Plaintiffs are entitled to damages in accordance with those representations, and in the amounts set forth in the declaration and exhibits submitted herewith.

b.      *Liquidated Damages*

Both the FLSA and the NYLL provide for liquidated damages in addition to actual damages.   Under the FLSA, an employer who violates the minimum wage and overtime requirements are liable for the unpaid wages "and an additional equal amount as liquidated damages," *i.e.*, 100 %.  29 U.S.C. § 216(b).  Unless the employer shows that the failure to pay lawful wages "was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation," liquidated damages are to be awarded.  29 U.S.C. § 260; *See*

- 13 -

*Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997). Since "[t]he [employer's] burden is a difficult one to meet," awarding liquidated damages is "the norm, single damages the exception." *Reich*, quoting *Brock v. Wiamowsky*, 833 F.2d 11, 19 (2d Cir. 1997) (internal quotations omitted). Under the NYLL, the employer owes liquidated damages constituting an additional 100 percent of the total wages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1–a); NYLL § 663.

In *Rana v. Islam*, 2018 WL 1659667 (2d Cir. April 6, 2018), the Second Circuit Court of Appeals held that it interpreted the NYLL and FLSA "as not allowing duplicative liquidated damages for the same course of conduct." *Id*. at *4. However, in the same facts, the Second Circuit also held that "the plaintiff should receive the larger of the two liquidated damages awards." *Id*. at *5.

Here, Defendants willfully and intentionally failed to pay Plaintiffs their wages or overtime pay and failed to make any good faith effort to comply with the law. Accordingly, Plaintiffs should be awarded liquidated damages equal to 100 percent of their unpaid minimum wages and overtime pay under the NYLL, which is larger than the FLSA liquidated damages because the applicable New York State minimum wage rates were higher than the federal one. Separately, Plaintiffs should also be awarded 100% liquidated damages for Defendants' failure to pay the NYLL "spread-of-hours" claim, which is not actionable under the FLSA.

      c.      *Prejudgment Interest*

Section 5001 of the New York Civil Practice Law and Rules ("CPLR") provides that "[W]here damages were incurred at various times, [prejudgment] interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable

intermediate date."  NY C.P.L.R. § 5001 (b).  Prejudgment interest accrues at 9% per annum on a simple interest basis.  NY C.P.L.R. § 5004.

Where defendants are in 'default, it is appropriate to calculate prejudgment interest based on assumptions and methodologies that are favorable to plaintiffs. *See Zeng Liu, supra,* 2004 U.S. Dist. LEXIS, at \*16-17.   Prejudgment interest is available for unpaid minimum wages and overtime claims under the New York Labor Law.  *See Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 33883, at \* 26-28 (S.D.N.Y. May 8, 2007); *Zeng Liu*, *supra*, 2004 U.S. Dist. LEXIS, at \*16-17.   It is available even where the plaintiff is awarded liquidated damages under the Labor Law. *Id*.

Prejudgment interest is equally available for unpaid wage claims under the FLSA. *See Perera v. Food Jungle, Inc.,* No. 05 Civ. 4347, 2006 U.S. Dist. LEXIS 73409, at \*29-30 (E.D.N.Y. Aug. 7, 2006). However, prejudgment interest generally is only awarded under the FLSA in the absence of an award of liquidated damages under the FLSA. *Chan, supra,* 2007 U.S. Dist. LEXIS 33883, at \*26.

Here, Plaintiffs incurred unpaid minimum wages and overtime compensation at different times - *i.e.,* each week in which Plaintiffs should have received their unpaid wages . In such a situation, it is reasonable to calculate prejudgment interest from the "midpoint of the accrual of damages." *Zeng Liu, supra,* 2004 U.S. Dist. LEXIS, at \*16-17; *Food Jungle, supra,* 2006 U.S. Dist. LEXIS 73409, at\* 29-30.

A "reasonable intermediate date" from which to calculate prejudgment interest on Plaintiffs' unpaid wages damages is "halfway between when plaintiffls] began and ceased working for the defendants." Id; see also N. Y C.P.L.R. § 5001 (b). The halfway point in Plaintiffs' collective period of employment is approximately August 30, 2010.

Accordingly, prejudgment interest on Plaintiffs' unpaid wages and overtime compensation under the New York Labor Law should be calculated at 9% per annum from August 30, 2010 through the date of judgment in this matter.

> d.      *Attorneys' Fees and Costs*

The FLSA and New York Labor Law both permit successful claimants to obtain reimbursement of their attorneys' fees and costs.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).

Plaintiffs request $9,590 in attorneys' fees, as set forth in the Gangat Declaration and supporting exhibits.  These fees - based on an hourly rate of $350 per hour - are reasonable, in accord with the prevailing rates in this community, and necessary to the prosecution of this action. *See Gutman v. Klein*, No. 03 Civ. 1570, 2009 U .S. Dist. LEXIS 123057, at *8 (E.D.N.Y. Oct. 13, 2009) (approving hourly rates of $300 and $400 for partners); *Lochren v. County of Suffolk*, No. 01 Civ. 03925, 2010 U.S. Dist. LEXIS 28288, at *7 (E.D.N.Y. March 23 , 2010) (awarding attorney with fifteen years of experience an hourly rate of $400); *Pinzon v . Paul Lent .Mechanical Systems, Inc .*, No. 11 Civ. 3384, 2012 U.S. Dist. LEXIS 134122, at *16-17 (E.D.N.Y. Aug. 21, 2012) (awarding partner an hourly rate of $400); *EBY Solutions, Inc . v. Schwartz*, No. 11 Civ. 0947, 2011 U.S. Dist. LEXIS 151585, at *18-19 (E.D.N.Y. Nov. 17, 2011) (approving hourly rate of $400 for partners); *GMG Transwest Corp. v. PDK Labs, Inc.*, No. 07 Civ. 2548, 2010 U.S. Dist. LEXIS 108581 at *3 (E.D.N.Y. Oct. 12, 2010) (prevailing hourly rates for partners in Eastern District is between $350 and $450; awarding two partners hourly rates of $400 and $450, respectively).

The starting point for an award of attorneys' fees in the Second Circuit is the "presumptively reasonable fee." *Kahlil v. Original Old Homestead Restaurant Inc.*, 657 F. Supp. 2d 470, 474-75 (S.D.N.Y. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v.*

*County of Albany*, 522 F. 3d 182, 183 (2d Cir. 2008)). The presumptively reasonable fee is "what a reasonable, paying client would be willing to pay." *Id.* at 190.  This "initial estimate" is calculated by multiplying "the number of hours reasonably expended on the litigation ... by a reasonable hourly rate." *Kirsch v. Fleet Street, Ltd.*, 148 F. 3d 149, 172 (2d Cir. 1998) (quoting *Hensely v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

In exercising its discretion, the Court must consider "all of the case specific variables that ... courts have considered relevant," including [t]he reasonable hourly rate ... a paying client would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively*." Arbor Hill*, *supra*, 522 F. 3d at 190 (emphasis in original).  "Following the determination of the presumptively reasonable fee, the Court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of plaintiff's success in the litigation." *Robinson v. City of New York*, No. 05-cv-9545, 2009 U.S. Dist. LEXIS 89981, at *7 (S.D.N.Y. Sept. 29, 2009). While a court may adjust the presumptively reasonable fee amount, there remains "[a] strong presumption that [this initial calculation] ... represents a 'reasonable' fee." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986).

Plaintiffs' costs - $610, as also set forth in the exhibits to the Gangat Declaration - are "reasonable out of pocket expenses ... which are normally charged to fee-paying clients," which warrant reimbursement. *Boyke*, *supra*, 2006 U.S. Dist. LEXIS 93928, at* 32-33.

For these reasons, Plaintiffs are entitled to their attorneys' fees and costs for bringing this action.

## **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully move the Court to:

a.  Enter a default judgment against Defendants pursuant to Rule 55(b)

b.  Adopt the above-state proposed findings of fact and conclusions of law;

c.  Award Plaintiffs damages in the amount of $89,484.20 for plaintiff Eliana Galan and $26,626.50 for plaintiff Carolina Guerrero;

d.  Award Plaintiffs attorneys' fees and costs in the amounts of $9,590 and $610 as set forth in the papers submitted herewith;

e.  Award Plaintiffs prejudgment interest; and

f.  Award Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
      November 14, 2018

**LAW OFFICE OF MOHAMMED GANGAT**

By: _____

      Mohammed Gangat, Esq.
      675 3rd Avenue, Suite 1810
      New York, NY 10017
      (718) 669-0714
      mgangat@gangatllc.com

*Attorneys for Plaintiffs*